## UNITED STATES v. W. P. DEVEREUX CO.

(Circuit Court, D. Minnesota, Fourth Division. February 7, 1905.)

CUSTOMS DUTIES—CLASSIFICATION—FROSTED WHEAT.

Wheat injured by frost to such an extent as to reduce it to a low grade or to "no grade," but which can still be used for seed and for making flour, is dutiable as wheat, under paragraph 234 of the tariff act of July 24, 1897, c. 11, § 1, Schedule G, 30 Stat. 170 [U. S. Comp. St. 1901, p. 1649], and not as a nonenumerated unmanufactured article, under section 6 of said act (30 Stat. 205 [U. S. Comp. St. 1901, p. 1693]).

On Review of the Decision of the Board of General Appraisers Sustaining the Protest of the Defendant against the Action of the Deputy Collector at Minneapolis, Minn.

See G. A. 5,796, T. D. 25,626.

Charles C. Houpt, U. S. Dist. Atty.

C. D. O'Brien, for defendant.

LOCHREN, District Judge. The commodity imported by the defendant was invoiced as "wheat screenings," and was claimed by defendant to be subject to the duty of 10 per cent. ad valorem, as a nonenumerated unmanufactured article, under section 6 of the tariff act of July 24, 1897, c. 11, 30 Stat. 205 [U. S. Comp. St. 1901, p. 1693]. The deputy collector classified the commodity as wheat, and assessed the duty thereon at 25 cents per bushel, under paragraph 234 of Schedule G of said act (30 Stat. 170, c. 11, § 1 [U. S. Comp. St. 1901, p. 1649]). Upon defendant's protest, and the evidence taken thereon by the Board of General Appraisers upon which the decision of the board was based, it appeared that the commodity was not "wheat screenings," but was wheat of which the entire crop had been considerably injured by frost before the kernels were fully hardened by ripening, and were still in the "milk" or "dough" state; resulting in some shrinking or wrinkling of most of the grains, reducing the weight of a bushel to less than 50 pounds. From that testimony it also appeared that such wheat would not produce flour fit to be made into human food, and that such wheat would not germinate, and was worthless for seeding. The Board of Appraisers found the facts accordingly, and concluded that the article imported was different from the article intended by the designation "wheat," as used in the tariff, and therefore sustained the protest. Upon the same evidence, I should concur with the decision of the board, and should regard the case like one where wheat had been ruinously scorched in a burning warehouse to such an extent that its capacity to germinate was gone, and that it had become unfit to be ground for breadstuff, and could no longer be rated or regarded as wheat in trade or commerce. But after the removal of the cause to this court it was referred to one of the General Appraisers to take and report further testimony; and many witnesses—among them, grain dealers and large farmers from North Dakota, having personal experience in frosted wheat—testified as to their personal knowledge and observation during several years when in that state the wheat crop was much injured by early frosts, and particularly respecting the crop of 1888, which was so injured by frosts early in August that the wheat which was harvested

that year was of the same character as the imported commodity under consideration. This testimony showed that considerable of that wheat of 1888 was put in the elevator warehouses and disposed of, other portions shipped by railroad and sold, and that the inhabitants of that region had it ground into flour at their local mills, and used the same for their bread, and that in the spring of 1889 the same farmers, to a large extent, used this frosted wheat for their seeding, and that it germinated and produced a good crop that year. Prof. Henry L. Bolley, teacher of botany at the Agricultural College of North Dakota, testified to careful experiments made by himself with samples of this very imported wheat to test its power of germination and value as seed, with the result that more than 70 per cent. of the seeds planted germinated and grew as well, substantially, as the shoots from wheat of the highest grade planted at the same time. This additional testimony shows that the actual character of this imported commodity is very different from what was represented by the testimony received and considered by the Board of Appraisers.

The single question is whether this article is wheat. No distinction as to grades of wheat is made by the tariff. A sample of the article shows the grains of which it is composed, and any person looking at such sample would unhesitatingly pronounce it to be wheat somewhat injured. The testimony now shows that wheat similarly injured has been used to produce bread for human food by a whole community, including such large farmers as Mr. Dalrymple, with 600 men to subsist, and that it is but little inferior to wheat of the best grade for seeding purposes, and is actually dealt in as wheat, whether classified as "rejected" or as "no grade."

The decision of the Board of General Appraisers is reversed, and the assessment by the deputy collector is affirmed.